

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

UNITED STATES OF AMERICA

    v.

GOKHAN GUN,

    Defendant.

Case No. 1:24-CR-199

STATEMENT OF FACTS

The United States and the defendant, GOKHAN GUN, agree that at trial the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1. The defendant was a resident of the Eastern District of Virginia.

2. Beginning in or about September 2023, the defendant began serving as a civilian employee for the United States Department of Defense ("DoD") at the Joint Warfare Analysis Center ("JWAC") in the Eastern District of Virginia. In connection with his employment, the defendant held a TOP SECRET//Sensitive Compartmented Information ("SCI") security clearance and had access to classified information.

3. National security information was information owned by, produced by, produced for, and under the control of the United States government. Pursuant to Executive Order 12958 signed on April 17, 1995, as amended by Executive Order 13292 on March 25, 2003, and Executive Order 13526 on December 29, 2009, national security information was classified as "TOP SECRET," "SECRET," or "CONFIDENTIAL," as follows:

    A. Information was classified as TOP SECRET if the unauthorized disclosure of that information reasonably could be expected to cause exceptionally grave damage to

1

the national security that the original classification authority was able to identify and describe.

B. Information was classified as SECRET if the unauthorized disclosure of that information reasonably could be expected to cause serious damage to the national security that the original classification authority was able to identify and describe.

C. Information was classified as CONFIDENTIAL if the unauthorized disclosure of that information reasonably could be expected to cause damage to the national security that the original classification authority was able to identify and describe.

4.     Access to national security information classified at any level could be further restricted through compartmentation in SCI categories. SCI information was classified information related to intelligence sources, methods, and analytical processes. Particular information was further protected through additional subcompartments, which required additional authorization to access. SCI was to be processed, stored, used, or discussed in an accredited Sensitive Compartmented Information Facility ("SCIF"), and only individuals with the appropriate security clearance and additional SCI permissions could have authorized access to such classified national security information.

5.     Classified information, including SCI, was marked according to its classification and applicable SCI compartments and subcompartments, following standard formats for different types of media, including headers and footers stating the highest classification level.

6.     Pursuant to Executive Order 13526, information classified at any level could be lawfully accessed only by persons determined by an appropriate United States government official to be eligible for access to classified information, who had signed an approved non-disclosure agreement, who received a security clearance, and who had a "need to know" the classified information. Classified information could only be stored or discussed in an approved facility.

7.     The defendant received training regarding classified information, including the definitions of classified information, the levels of classification—including SCI—and the proper

handling, marking, transportation, and storage of classified materials. Specifically, the defendant received training on his duty to protect classified materials from unauthorized disclosure, which included complying with handling, transportation, and storage requirements. The defendant knew that unauthorized removal of classified materials and transportation and storage of those materials in unauthorized locations risked disclosure and transmission of those materials, and therefore could endanger the national security of the United States and the safety of its citizens. In particular, the defendant was advised that unauthorized disclosure of TOP SECRET information reasonably could be expected to cause exceptionally grave damage to the national security of the United States, and that the unauthorized disclosure of SECRET information reasonably could be expected to cause serious damage to the national security of the United States. The defendant was further advised that violation of rules governing the handling of classified information could result in criminal prosecution.

8.      Because the defendant held a security clearance as part of his assignment as a DoD civilian employee, the United States government entrusted him with access to sensitive government materials, including classified documents and information.

9.      On or about September 25, 2023, the defendant signed a Classified Information Nondisclosure Agreement. Additionally, on or about December 12, 2023, the defendant signed a Sensitive Compartmented Information Nondisclosure Agreement. Both agreements provide, in part, that unauthorized disclosure or mishandling of classified information may violate U.S. law, including Title 18, United States Code, Section 1924.

10.     The SCI Nondisclosure Agreement that GUN signed on December 12, 2023, contains, among other things, the following provision:

> I have been advised that the unauthorized disclosure, unauthorized retention, or negligent handling of SCI by me could cause irreparable injury to the United States

3

or be used to advantage by a foreign nation. I hereby agree that I will never divulge anything marked as SCI or that I know to be SCI to anyone who is not authorized to receive it without prior written authorization from the United States Government or Agency (hereinafter Department or Agency) that last authorized my access to SCI. I understand that it is my responsibility to consult with appropriate management authorities in the Department or Agency that last authorized my access to SCI, whether or not I am still employed by or associated with that Department or Agency or a contactor thereof, in order to ensure that I know whether information or material within my knowledge or control that I have reason to believe might be, or related to or derived from SCI, is considered by such department or Agency to be SCI. I further understand that I am obligated by law and regulation not to disclose any classified information or material in an authorized fashion.

11.     Beginning in or around May 2024 and continuing until on or about August 7, 2024, in the Eastern District of Virginia, the defendant knowingly and without authority removed two classified documents from his workspace at JWAC and with the intent to retain them at his primary residence, which was within the Eastern District of Virginia and was not an approved facility for the storage of classified information.

12.     U.S. government Original Classification Authorities confirmed that these documents were classified at the time the defendant printed and removed them from the JWAC facility and that they remain classified to the present date. These documents bore visible classification markings as noted below.

| Document Number | Classification Markings |
|---|---|
| 1 | TOP SECRET//SCI with subcompartments |
| 2 | TOP SECRET//SCI with subcompartments |

13.     The defendant also removed and retained three other documents that bore visible classification markings with subcompartments, referred to herein as Documents 3, 4, and 5.

14.     On August 8, 2024, the defendant printed his Intelligence Community credentials, which showed his security clearance and specific authorizations to access SCI compartments and subcompartments.

4

15.     On August 9, 2024, the defendant was scheduled to depart the United States on a flight to Puerto Vallarta, Mexico at 6:52 a.m. from Reagan National Airport through Dallas Fort Worth International Airport. The defendant reported this travel to his employer and stated that he would not have any travel companions.

16.     On the morning of August 9, 2024, Special Agents of the Federal Bureau of Investigation observed a ride share service arrive at the defendant's residence. Agents watched the defendant exit his residence and approached him. Agents then observed a black backpack inside Gun's residence. Inside this backpack, agents found Document 1.

17.     Also found in the defendant's backpack was a printout of the defendant's Intelligence Community credentials which included his United States security clearances and a variety of accesses to compartments and subcompartments. In bold red letters at the top of the document was written "This information is for personal use only. Do NOT hold or disseminate. Privacy Sensitive – any misuse or unauthorized access may result in disciplinary action."

18.     Finally, in his backpack, the defendant also had a notebook with handwritten notes and drawings. Agents determined that at least one of the pages included handwritten notes that mirrored a report classified TOP SECRET//SCI with subcompartments. Agents did not find the corresponding report in the defendant's residence. A U.S. government Original Classification Authority reviewed the handwritten note and confirmed that it is classified TOP SECRET//SCI with subcompartments.

19.     In the defendant's dining room, agents observed stacks of papers. Among the papers were Documents 2-5. The defendant printed Document 2 on August 7, 2024, just two days before his scheduled departure.

20.     This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the

5

defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

21.    The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

Erik S. Siebert
United States Attorney

Date:    March 20, 2025          By:    _____

John T. Gibbs
Assistant United States Attorney

6

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, GOKHAN GUN, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
GOKHAN GUN

I am David Benowitz, the defendant's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
David Benowitz, Esq.
Attorney for GOKHAN GUN

7